UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MONROE FEDERAL SAVINGS AND : Case No. 3:12-cv-52
LOAN ASSOCIATION

    Plaintiff, : Judge Timothy S. Black

vs.

NEA GALTIER PARKING, LLC, *et al.*,

    Defendants.

**ORDER: (1) DENYING FIRST SOUTHERN NATIONAL BANK'S MOTION TO DISMISS BORROWER'S AND GUARANTORS' AMENDED CROSS-CLAIMS (Doc. 55); and (2) DENYING FIRST SOUTHERN NATIONAL BANK'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. 56)**

This civil action is before the Court on First Southern National Bank's motion to dismiss Borrower's and Guarantors' amended cross-claims (Doc. 55) and the parties' responsive memoranda (Docs. 60, 64, 66, 67).[1] Specifically, First Southern moves to dismiss the cross-claims of NEA Galtier Parking and Guarantors Steven Resnick, Dale Starks, and Edwin Simmons (the "Guarantors" and collectively with NEA Galtier, the "Borrowers"), because, pursuant to Fed. R. Civ. P. 12(b)(6), the cross-claims fail to state claims upon which relief can be granted. The amended crossclaims assert interference

---

[1] First Southern seeks oral argument on this motion. (Doc. 64). Local Rule 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." Here, the Court finds that the pleadings are clear on their face, and that oral argument is not necessary. *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, at *7 (S.D. Ohio July 27, 2006) (C. J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

with contract and prospective business relations (Count I) and civil conspiracy (Count II). (*See* Doc. 54).

Also pending before the Court is First Southern's motion to dismiss the amended complaint (Doc. 56) and the parties' responsive memoranda (Docs. 62, 64). The amended complaint asserts claims for declaratory, injunctive, and affirmative relief (Count I), breach of contract (Count II), indemnification/contribution (Count III), and violation of Georgia Code Section 13-6-11 (Count IV). (Doc. 51).[2]

## I. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

---

[2] The relevant facts of this case are outlined in the Court's Order denying preliminary injunction. (Doc. 37 at 2-6).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II. ANALYSIS

### A. Motion to Dismiss Amended Crossclaims

#### 1. *Whether First Southern is a party to the loan documents*

Although First Southern's filings appear to conflict on the issue of whether it is a party to the loan documents, ultimately First Southern clearly states that is "does not claim to be a party to the Loan documents." (Doc. 67 at 11). This Court already held that "First Southern is not a lender to NEA Galtier and is not exercising contractual rights under the loan documents. First Southern is not a party to the loan documents and has no direct contractual rights against NEA Galtier." (Doc. 50 at 7). Rather, First Southern acquired title to a participation interest in Plaintiff's loan to Galtier Parking. (*Id.*) The terms of the Participation Agreement make clear that Plaintiff retains the direct contractual relationship with Galtier Parking. (*See, e.g.*, Doc. 23, Ex. 1 at §§ 10, 16). The contractual relationship between Galtier Parking and First Southern is central to this litigation and determining whether First Southern can force Plaintiff to foreclose against Galtier Parking.

## 2. *Whether Galtier Parking stated claims for tortious interference and civil conspiracy*

First Southern argues that the borrowers fail to plead the required elements of a plausible intentional interference and civil conspiracy claim. First Southern claims that the loan documents are the only contract, and pursuant to the loan documents, the Borrowers' failure to pay real estate taxes was a default and breach of the contract; and Borrowers cannot assert that First Southern caused this breach.

First, this Court has already held that Galtier Parking stated sufficient facts to maintain claims for tortious interference and civil conspiracy. (Doc. 50 at 7-8).

Next, First Southern misstates the basis for the crossclaims. Galtier Parking alleges that, among other things, First Southern and William Cooley made demands for financial and operating information regarding the garage under the guise of considering a discounted payoff or loan modification, but actually made the demands in furtherance of their intention of obtaining ownership for themselves. (Doc. 54 at ¶¶ 18-22). Galtier Parking maintains that First Southern's actions and the scope of their demands exceeded any claimed interest in or under the loan and in fact acted with the intention and purpose of obtaining ownership of the garage for their own financial benefit and not to exercise valid loan remedies.[3] The Court previously determined that these allegations state a claim

---

[3] First Southern denies these facts, maintaining that "[t]he only pecuniary gain and financial benefit discernible from the amended claims, however, are First Southern's interests in repayment, in recovering the amount that the Borrowers owe on the Loan and Guarantees." (Doc. 64 at 8). While this stage of the litigation is not the time to hash out the disputed facts, the Court does note that Galtier Parking is making payments on the loan, made repairs to the parking garage (which created the tax arrearage in the first instance), and is in the process of repaying back taxes (and has now done so). Accordingly, if First Southern's goal is repayment, it appears that such an effort is being made and perhaps litigation is simply impeding that process. (*See* Doc. 51 at ¶¶ 26-29, 36, 37, 46, 30, 32).

for tortious interference. (Doc. 50 at 7-8).

First Southern also argues that "the Loan documents are the only contract." (Doc. 55 at 10). However, the crossclaims allege interference not only with the administration of the loan documents but also interference with the contracts and economic relations between Galtier Parking and third parties related to Galtier Parking's ownership and operation of the garage, "including business relations with individual and group parkers and Galtier Parking's ability to refinance the garage with other lenders." (Doc. 54 at ¶ 28).

Moreover, there is authority that a claimed justification or privilege against an action for tortious interference is a question of fact under both Ohio and Minnesota law. *See, e.g., Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994); *Elwert v. Pilor Life Ins. Co.*, 77 Ohio App. 3d 529, 539-40 (Ohio 1st Dist. App. 1991). Again, this Court previously held that "even if First Southern's economic interest in the loan between Plaintiff and NEA Galtier could justify First Southern's specific actions in this case, that issue is not capable of resolution upon a motion to dismiss." (Doc. 50 at 7-8).[4]

### 3. *Foreclosure of the Mortgage*

Next, First Southern maintains that Galtier Parking's amended crossclaims should be dismissed because no foreclosure of the mortgage could take place before September

---

[4] First Southern repeatedly argues that the Court look to the "facts." (*See* Doc. 55 at 2). However, Galtier Parking disputes the majority of these "facts." Arguing disputed facts and evidence is not appropriate for resolution on a motion to dismiss.

2014. (Doc. 64 at 6-8). First Southern reaches this conclusion based on a letter from Plaintiff's counsel which describes the procedure for a *tax foreclosure* by the County, not a *foreclosure of the mortgage*. (*Id*., Ex. 1).[5] Unlike the tax foreclosure process, there is no 3-year limit on foreclosure of the mortgage. Accordingly, this argument fails as a matter of law.[6]

### 4. *Request for Fees*

Galtier Parking requests that First Southern pay its costs and fees for responding to the motion to dismiss the crossclaims. (Doc. 60 at 2-3). Specifically, Galtier Parking maintains that the motion was filed either with an utter disregard to prior briefing and decisions of this Court or with the purpose of multiplying these proceedings and imposing additional litigation expense on a financially challenged borrower. (*Id*.) Additionally, Galtier Parking maintains that the filings argue disputed facts, which unnecessarily multiplies the cost and burden of this litigation.

Although First Southern's motion does advance minor new arguments, in large part the Court agrees with Galtier Parking's conclusion. However, in lieu of ordering fees, the Court takes this opportunity to notify First Southern that its filings are excessive, and they in part disregard this Court's prior rulings. If First Southern continues down this path, the Court will consider sanctions in the future.

---

[5] "A tax foreclosure can only occur under Minnesota law upon the expiration of a three year forfeiture period commencing with the date of the initial tax delinquency notice." (*Id*.)

[6] First Southern later concedes that this argument fails and that it "misread the McNamee letter." (Doc. 68 at 1).

**B.     Motion to Dismiss Second Amended Complaint**

*1.     Declaratory judgment and indemnification/contribution*

First Southern argues that Plaintiff's claims for declaratory judgment and indemnification/contribution should be dismissed for failure to state a claim upon which relief can be granted. These arguments are similar to those previously raised and rejected by this Court. (*See* Doc. 50 at 4-6).

**a.     Good Faith and Fair Dealing**

First Southern argues that Plaintiff cannot base a declaratory judgment claim on paragraph 16(e) of the Participation Agreement because: (1) Plaintiff does not have a contract right to do so; (2) paragraph 16(e) states that First Southern's decision shall control; and (3) paragraph 16(e) makes First Southern's decision automatic. (Doc. 56 at 4-7). Accordingly, First Southern argues that Plaintiff's claims for declaratory judgment should be dismissed because "Monroe does not have a contract right to, or with respect to, a decision from First Southern: Monroe does not have a contract right (i) to require a decision from First Southern; (ii) to make a decision for First Southern or (iii) to determine the content of any First Southern decision." (Doc. 56 at 5).

Contrary to First Southern's arguments, Plaintiff's claim for declaratory judgment has nothing to do with whether it is entitled to force First Southern to make decisions pursuant to paragraph 16(e). First Southern demanded foreclosure and receivership proceedings. Plaintiff's claim is based on that demand, which it claims violated the duty of good faith and fair dealing.

When a claim for declaratory relief under 28 U.S.C. § 2201 *et seq.* seeks a declaration of rights and obligations under a contract governed by state law, that state's law dictates the merits of the entitlement to the relief requested. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 455 (6th Cir. 2003). Here, Plaintiff's claim for declaratory relief requests a declaration of its rights and obligations under the Participation Agreement which is governed by Georgia law. (Participation Agreement at ¶ 20). Georgia law holds that:

> "Good faith" and "reasonableness" do not comprehend arbitrary or capricious reasons, or considerations based on pecuniary gain, or merely personal preferences; rather, they refer to "considerations of fairness and commercial reasonableness." . . . A finder of fact would be authorized to find that denying consent to the proposed transaction on the basis that the Authority hoped to secure he property for itself or hoped to extract additional fees from Hunting constituted unreasonableness or failure to act in good faith.

*Hunting Aircraft v. Peachtree City Airport Auth.*, 636 S.E.2d 139, 141 (Ga. 2006). Plaintiff's second amended complaint makes numerous allegations that, taken as true, would constitute a breach of First Southern's duty of good faith and fair dealing. Specifically, Plaintiff alleged that First Southern is attempting to exercise its discretion under paragraph 16(e) of the Participation Agreement for its own pecuniary gain. The discretion granted First Southern in paragraph 16(e) cannot be exercised in a way that would constitute a breach of its duty of good faith and fair dealing.

The fact that paragraph 16(e) states that its decision "shall" control the response to the default under the Loan and that the decision is "automatic" do not vitiate its duty of good faith and fair dealing. Accordingly, First Southern's argument fails.

### b. Relationship between indemnification/contribution and declaratory judgment

Next, First Southern argues that Plaintiff's claim for indemnification/contribution should be dismissed for the same reasons its declaratory judgment claim should be dismissed, because the indemnification/contribution claim "is derivative of" its declaratory judgment claim. (Doc. 56 at 7).

Plaintiff's indemnification/contribution claim seeks indemnification and/or contribution from First Southern for any liability it may have to the Borrowers. (Doc. 51 at ¶¶ 80-83). That claim is not derivative of its claim for declaratory judgment. However, even if the declaratory judgment claim were dependent on the first claim, since the first claim has been properly pled and survives, so to must the third claim.

### c. Unilateral contract right

First Southern maintains that Plaintiff's first and third claims should be dismissed because they "require that Monroe have some unilateral contract right against First Southern to confer dispensation on the Borrowers following their material default." (Doc. 56 at 7-8). First Southern does not cite any authority to support its position, rather it simply makes the unsupported assertion that it is an element of Plaintiff's first and third claims. However, nothing requires Plaintiff to demonstrate that it had some overriding right to confer dispensation on the Borrowers in order to maintain its claims. The "dispensation" First Southern refers to would be a collateral effect of its own violation of its duty of good faith and fair dealing in levying its demands pursuant to paragraph 16(e). Therefore, First Southern's argument fails.

### d. Contractual obligations

Next, First Southern claims that instead of arguing that Plaintiff's claims must derive from a separate overriding right of its own to confer dispensation on the Borrowers, "[a]ny right of Monroe to let the Borrowers avoid receivership and foreclosure against First Southern's interests and direction would have to derive from a right of the Borrowers." (Doc. 56 at 8).

However, Plaintiff's declaratory judgment claim is not predicated on the Borrowers' or its own, right, duties, or obligations under the Loan documents. The Participation Agreement is a separate contract with its own parties and its own rights, duties, and obligations. Plaintiff's claim for declaratory judgment seeks judicial declarations regarding the rights and obligations under the Participation Agreement and does not "derive from a right of the Borrowers" as alleged by First Southern. Whatever rights the Borrowers have under the Loan documents do not dictate First Southern's obligations of good faith under the Participation Agreement.

With respect to the contribution claim, until Plaintiff's actual liability to the Borrowers, if any, is determined, Plaintiff's right to contribution and/or indemnification for that liability cannot be determined via a motion to dismiss.

### e. Plausibility of declaratory judgment claim

Plaintiff's declaratory judgment alleges "bad faith" because First Southern purportedly demanded foreclosure and receivership proceedings for its own pecuniary

gain and despite their commercial unreasonableness. Plaintiff does not argue, as First Southern maintains, that it must "give up the right of recovery in order to preserve the right of recovery." Moreover, the emails First Southern cites do not change the analysis. While there is evidence that the garage required repairs, there is also evidence that the necessary structural repairs were made. (Doc. 30, Ex 1 at ¶¶ 7-8). Accordingly, Plaintiff's declaratory judgment claim survives.

    **f.**  **Plausibility of indemnification/contribution claim**

  Plaintiff's claims for indemnification and/or contribution arise from any potential liability to the Borrowers for actions taken at First Southern's direction pursuant to the Participation Agreement – including instituting the cognovit lawsuits, accelerating the debt, and making the various demands upon the Borrowers following discovery of the tax arrearage.

  While First Southern notes that Plaintiff was obligated to take the actions it did because of paragraph 16(e), it also claims that Plaintiff acted as a volunteer and therefore cannot maintain a claim against First Southern for indemnification or contribution. Here, Plaintiff's third claim seeks indemnification and/or contribution for sums that it is or may be liable for to the Borrowers. To the extent that it has no such liability to the Borrowers, its third claim does not purport to seek payment from First Southern. First Southern cannot argue the action Plaintiff took pursuant to its demand under paragraph 16(e) was done "voluntarily" by Plaintiff, as First Southern notes numerous times they were not.

Accordingly, Plaintiff argues that any liability stemming from those actions taken at First Southern's demand pursuant to a contractual obligation must flow to First Southern, which is exactly what Plaintiff's claim for relief seeks.

Accordingly, Plaintiff's claim for indemnification/contribution survives.

### 2. *Foreclosure and Receivership Proceedings*

First Southern maintains that paragraph 34 of the Mortgage gives them the direct right to institute foreclosure and receivership proceedings. However, paragraph 34, the "Consent to Loan Participation" paragraph, entitled Plaintiff to convey "one or more participation interests in the Loan," and the Borrowers agree that "the purchasers of any such participation interests will be considered the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests." (Mortgage at ¶ 24). Nothing in paragraph 34 conveys any greater rights to a participating bank such as First Southern than the rights conveyed in the relevant participation agreement. In fact, paragraph 34 expressly limits the rights of the participating bank to "all the rights granted under the participation agreement or agreements governing the sale of such participation interests." The Participation Agreement reserves the rights of collection and enforcement to Plaintiff, including foreclosure and receivership proceedings. The Mortgage is not an agreement to which First Southern is even a party, and therefore the Mortgage does not give First Southern the direct right to institute foreclosure and receivership proceedings.

### 3. *Georgia Code Section 13-6-11*

Next, First Southern requests dismissal of Plaintiff's claim for expenses pursuant to Georgia Code Section 13-6-11.

Section 13-6-11 permits a plaintiff to recover expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Bad faith includes bad faith in the performance of a contract. *Robert E. Canty Bldg. Contractors, Inc. v. Garrett Mach. & Constr., Inc.*, 608 S.E.2d 280, 282 (Ga. App. 2004). The other two prongs, stubborn litigiousness and unnecessary trouble and expense, exist if "no bona fide controversy or dispute existed as to the defendant's liability." *Nash v. Studdard*, 670 S.E.2d 508, 515 (Ga. App. 2008). The existence of a "justiciable" controversy for declaratory judgment purposes is not synonymous with a "bona fide" controversy for purposes of Section 13-6-11. Moreover, the entire crux of Section 13-6-11 assumes the existence of litigation in order to determine whether there was a "bona fide" controversy: "forcing a plaintiff to resort to the courts in order to collect is plainly causing him 'unnecessary trouble and expense.'" *Backus Cadillac-Pontiac, Inc. v. Ernest*, 394 S.E.2d 367, 369-70 (Ga. 1990).

#### a. **Plausibility of the Section 13-6-11 Claim**

First Southern argues that Plaintiff cannot maintain a claim under Section 13-6-11 based on four "undisputed facts" which lead to the conclusion that "First Southern did not do anything to deny Monroe the essence of the contract." (Doc. 56 at 18). However,

Section 13-6-11 does not acknowledge "the essence of the contract," let alone predicate liability on it – and the alleged "undisputed facts" are actually disputed.

Next, First Southern claims that because personal jurisdiction and venue would have been improper in Georgia given the current parties, the Georgia statute should not apply. However, the Participation Agreement is a contract governed by Georgia law. (Participation Agreement at ¶ 20). Georgia Code Section 13-6-11 applies to contract claims under Georgia law. Additionally, the Sixth Circuit has held that a request for costs and attorneys' fees based on a contractual provision presents questions of both state and federal law. *Gen. Elec. Co. v. Latin Am. Imports*, 127 Fed. Appx. 157 (6th Cir. 2005). The initial question of whether a party is entitled to costs and attorneys' fees under the contract is one of substantive law governed by the state choice-of-law provision in the contract. *Id.* at 159-160. Section 13-16-11 essentially imputes a fee provision into all Georgia contracts to the extent that the conditions set forth in the statute exist in any particular case, specifically "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Georgia Code § 13-6-11.

Georgia Code Section 13-16-11 finds its applicability to this case by virtue of the Georgia choice-of-law provision in the Participation Agreement. The applicability of Section 13-6-11 is a matter of contract interpretation and enforcement as between

Plaintiff and First Southern under the Participation Agreement.[7]

### b. Cognovit Action

Next, First Southern maintains that the unenforceability of the cognovit provisions in this case caused all of the parties' litigation expense, precluding any claim under Section 13-6-11.

The Miami County, Ohio cognovit action did not involve First Southern and did not include any part of the foreclosure and receivership dispute that has dominated this case to date. In fact, none of the disputes between Plaintiff and First Southern were part of the Miami County cognovit judgment case and it is strictly those disputes – pursuant to the Participation Agreement - on which Plaintiff's Section 13-6-11 claim is based.

Therefore, Plaintiff's claim for attorney fees pursuant to Georgia § 13-6-11 survives.

### III. CONCLUSION

Accordingly, for the reasons stated here:

(1)  First Southern's motion to dismiss NEA Galtier Parking's crossclaims (Doc. 55) is **DENIED**; and

(2)  First Southern's motion to dismiss the second amended complaint (Doc. 56) is **DENIED**.

---

[7] First Southern argues that because personal jurisdiction and venue of the instant dispute would not be proper in Georgia, Section 13-6-11 should not apply. However, this is irrelevant as it is in all choice-of-law analyses where a court in one state applies the law of another pursuant to a contract choice-of-law provision.

**IT IS SO ORDERED.**

Date: November 16, 2012               *s/ Timothy S. Black*
                                      Timothy S. Black
                                      United States District Judge